# SULLIVAN,

## JULY TERM, A. D. 1858.

---

WAKEFIELD, Ex'r, *v.* PHELPS, Appt.

As the law now stands in this State, a married woman cannot make a devise of real estate to her husband.

In the construction of a statute, all acts, *in pari materia,* are to be taken together, as if they were one law.

Where it is apparent that the Legislature intended to revise a statute, the former statutes upon the subject, so far as in conflict with the last, are no longer in force, though not expressly repealed.

A will does not take effect, nor are there any rights acquired under it, until the death of the testator; and its construction and validity depend upon the law as it then stands.

APPEAL from the decree of a court of probate, held at Newport, for this county, on the 29th day of April, 1857, setting forth that a certain instrument, purporting to be the last will and testament of Jerusha Wakefield, late of Unity, in said county, deceased, and to have been made and executed on the 18th day of February, 1850, was presented for approval and allowance by Clark Wakefield, of said Unity, the executor therein named; and that the same was, on the said 29th day of April, proved and approved in said court of probate, as and for the last will and testament of the said Jerusha Wakefield; and that afterwards, on the said 29th day of April, Chester Phelps, of Haverhill, one of the heirs at law of the said Jerusha Wakefield, claimed an appeal from said decree, approving said instru-

ment, which appeal was allowed and entered at the next term of this court, and is still pending therein.

And the said Clark Wakefield comes here into court, and moves that the said instrument may be proved and allowed, as and for the last will and testament of the said Jerusha Wakefield.

And thereupon the said Chester Phelps says that the same ought not to be approved and allowed as aforesaid, because he says that at the time of making and executing said instrument by the said Jerusha Wakefield, on the said 18th day of February, 1850, and at the time of her decease, on the 18th day of March, 1856, she was the wife of said Clark Wakefield, and could not by law make a valid devise of real estate to her husband, and that the will, having no effect to change the descent or distribution of any other property or estate except said devise to her husband, is void and not entitled to probate. To this plea the executor demurred.

*A. & S. H. Edes,* for the appellant.

1. This will is to be construed by the law as it was at the death of the testratrix, in March, 1856, and not by the law as it might have been at the time of executing the will. *Loverin* v. *Lamprey,* 22 N. H. (2 Foster) 434.

2. At common law, *feme covert* is *sub potestate viri,* and incapable of making a will. 2 Black. Com. 498; 7 Bacon Abridg., title, Wills & Tes., Div. B, 300, 301; 1 Jarman on Wills 30, 33, 34, 35, and notes; *Holman* v. *Perry,* 4 Metcalf 496; *Osgood* v. *Breed,* 12 Mass. 525; *Cutler* v. *Butler,* 25 N. H. (5 Foster) 350; *Marston* v. *Norton,* 5 N. H. 205.

3. The only remaining question then, is, have the statutes of this State (in force in March, 1856) conferred upon married women the power of devising real estate to their husbands? If we apply the rules of construction, adopted in *Marston* v. *Norton,* above cited, the statute of 1845 should

be construed in such a manner as to enable a married woman to devise her real estate to any person *except* her husband; and any other construction would operate to make the husband, in all cases, heir at law to his wife, as he could, almost invariably, from the influence of the marriage relation, compel the execution of a will in his favor. *Morse* v. *Thompson*, 4 Cush. 562; *Beach* v. *Manchester*, 2 Cush. 72.

But the legislature of this State, by the statute of 1854, have settled this question.

The exception, in that statute, of the husband, as a devisee, becomes part and parcel of all the statutes previously passed relative to the same subject, and governs the construction of the statute of 1845, as well as the statute of 1854.   6 Bacon's Ab., sec. 382, Div. 3, 5; *Hayes* v. *Hanson*, 11 N. H. 284; 1 Kent 463, 464.   Also, the latter statute differs from that of 1845, the word "injuriously," after the word "effect," being left out.   *Morse* v. *Thompson*, 4 Cush. 562.

*Barton & Bowers*, for the executor.

The authorities cited by the counsel for the appellant, to the point that a *feme covert* is *sub potestati viri*, and therefore incapable of making a will at common law, have, as we say, no bearing on the question before the court.   The decision is to be determined by the statutes of the State.

The statute provides that a married woman, whenever she shall be entitled to hold property in her own right, may dispose of said property by will or otherwise, as if she were sole and unmarried.   Rev. Stat., chap. 149, sec. 3. The principle declared by this statute has long been an admitted principle in equity, and may well be regarded as merely declaratory of the common law.   *Cutler* v. *Butler*, 25 N. H. (5 Foster) 350.

The same statute provides that if she shall decease

*intestate*, her husband shall be *excluded* from any share in her said estate, clearly implying the power of the wife to devise her estate to her husband.

It is not material, as we think, to consider what may or may not have been the construction put upon previous statutes. The question is, can a *feme covert* make a valid devise of her real estate, by the present statutes of this State? And if so, can she make such devise to her husband? The act of 1845, Comp. Stat., chap. 158, sec. 11, gives the power in full. Nothing is left to doubtful construction. The terms are direct and positive, and there is nothing in the chapter to qualify them in the least. It would seem to be difficult to frame a statute more certain in meaning. Its language is: *"Any married woman,"* &c., *" shall have power to devise and dispose,"* &c.

This statute is general in its scope. It limits the devise to no particular class of devisees. It rejects no one on account of his or her relation to the devisor.

The argument urged on the other side, that it was the intention of the legislature to exclude the husband from ever taking, as devisee, by reason of the influence of the married relation, seems to be without foundation, as in that event he could as effectually, though not as directly, get the benefit and control of his wife's estate, by secret trust or otherwise, and thereby cause the devise to be made according to *his* will, and *not hers.*

But it is said that the statute of 1854 has settled the question *against* the right of a married woman to make a valid will of her real estate to her husband.

But we submit, that the statute has *no such effect.* The act is entitled, "An act to empower married women to make testamentary disposition of their estate."

There is certainly nothing in the title which would indicate that the statute, to be enacted, was to restrict the *power* of *devising* real estate. The act is to *empower*, not *restrict.*

The title may serve to show the general scope and purport of the act, and the inducement which led to its enactment. 1 Kent (6th ed.) 460.

This statute does not repeal the statute of 1845. It contains no repealing clause or section, and it is evident, we think, that had the legislature intended to introduce so important a change as is claimed to have been effected by this statute, it would have added a repealing section.

The construction, contended for by the appellant, is contrary to the spirit of modern legislation everywhere; and we cannot believe that the legislature intended to exclude the husband, who, to say the least, would be as likely as brothers, sisters, or more distant relatives, to regard the wishes of his wife in the distribution of her property.

EASTMAN, J. The question presented by the pleadings in this case is this: Can a married woman make a valid devise of real estate to her husband?

At common law the will of a *feme covert*, disposing of her real estate to any person whomsoever, was void. She was regarded as under a civil disqualification, arising from want of free agency, and as so entirely subject to the power of the husband, that she could in no case make what could properly be called a will. Powell on Devises 97; Com. Dig., Devise, H., 3; Shep. Touch. 402; *Osgood* v. *Breed*, 12 Mass. 225; *Marston* v. *Norton*, 5 N. H. 210; *Cutter* v. *Butler*, 25 N. H. (5 Foster 350.)

By the provincial act of 4 George I., chap. 73, it was enacted "that every person lawfully seized of any lands, &c., in his own proper right, in fee simple, shall have power to give, dispose and devise, as well by his last will and testament in writing, as otherwise, by any act executed in his life, all such lands," &c. Prov. Laws 104.

The statute of February 3, 1789, provided "that every person, lawfully seized and possessed of any estate in lands,

&c., of the age of twenty-one years and upwards, and of sane mind, shall have power to give, devise and dispose of the same, as well by his last will and testament in writing, as by any other act duly executed," &c.

The act of July 2, 1822, was nearly identical in phraseology with that of February 3, 1789, and gave the same powers. N. H. Laws 355, sec. 1.

The provisions of these statutes are substantially the same as those of 32 Hen. 8, chap. 1, and of the early Massachusetts statutes upon the same subject. In terms, they give the power to every person, having land, to devise it; and the language would seem broad enough to include married women; but they have never been held to be comprehended within their intent or meaning. Powell on Devises 93, 95; *Osgood* v. *Breed*, 12 Mass. 530; *Morse* v. *Thompson*, 4 Cush. 563; *Marston* v. *Norton*, 5 N. H. 205.

By the Revised Statutes, chap. 156, sec. 1, it is provided that " every person, of the age of twenty-one years, and of sane mind, may devise and dispose of his property, real and personal, and of any right or interest he may have in any property, by his last will in writing." The same construction has been put upon this section as upon the several previous statutes already cited, and it has been decided that the statute does not include married women. *Cutter* v. *Butler*, 25 N. H. (5 Foster) 352.

The Revised Statutes further provide, that " whenever any married woman shall be entitled to hold property in her own right, and to her separate use, she may make contracts, may sue and be sued in her own name, and may dispose of said property by will or otherwise, as if she were sole and unmarried; and if she shall decease intestate, her husband shall be excluded from any share in her said estate, and such estate shall be administered and inherited in the same manner as if she were sole and unmarried." Rev. Stat., chap. 149, sec. 3.

The other sections of this chapter, however, show that

these provisions have reference to married women who have been deserted by their husbands, and who live separate from them, and to the wives of aliens, living in this State, apart from their husbands.

This is also pretty clearly indicated by the latter clause of the section itself, which provides that in case of the decease of the wife, intestate, the husband shall be excluded from any share in her estate. The clause operates as a penalty upon the husband who shall desert his wife, and shows that it is to such persons that the section applies, and not to husbands in general.

This chapter and section were not intended to make a general change in the law affecting the powers of married women residing with their husbands, but only a specific change in the particular cases stated; so that down to the time and subsequent to the enacting of the Revised Statutes, and as late as 1845, there was no general law in this State by which a *feme covert* could make a will, which should be valid to pass real estate to her husband.

In June, 1845, the legislature passed the following act: "That any married woman, of the age of twenty-one years, and of sane mind, who may be seized in her own right of any real estate in this State, shall have power to give, devise and dispose of the same, by will, in writing, which will, when signed and sealed by the devisor, and duly attested and subscribed by three credible witnesses thereto in her presence, and executed with the formalities now required by law in other cases, shall be proved and allowed by the courts of probate in this State, and shall be effectual in distributing the estate devised, according to the intention of the devisor; *provided*, however, that any such will shall in no case affect injuriously the rights acquired by the husband in any estate so devised, by virtue of the marriage contract." Pamp. Laws, chap. 236; Comp. Stat., chap. 158, sec. 11.

The ground upon which it is held that a wife cannot

make a devise to her husband is, that she is incapacitated, by force of the marriage relation, to do any legal act in regard to her property, so long as the coverture continues; that she cannot sell or convey her real estate, nor devise it to any one, unless by some ante-nuptial reservation of the power, or by force of some statute provision. Thus the deed of a married woman, in which her husband does not join, is void. *Matthews* v. *Puffer,* 19 N. H. 448; 1 Black. Com. 444; Com. Dig., Baron and Feme, 2; *Ela* v. *Card,* 2 N. H. 175; *Murray* v. *Emmons,* 19 N. H. 483.

It is not doubted that this incapacity, being legal only, may be removed by statute, and that the power may be given to a *feme covert* to dispose of her separate property as she may please, and to whomsoever she may please, her husband included.

The act of 1845 is general in its provisions, and removes the marital disability to make a will of real estate; and, with the exception of the proviso, would seem to be broad enough to make a devise to the husband, although in terms such power is not given.

It will be noticed that the proviso is that such will shall not affect "injuriously" the rights of the husband. It is unlike the proviso in the Massachusetts statute, which was held by a majority of the court, in *Morse* v. *Thompson,* 4 Cush. 562, to take from the wife the power to make a devise to the husband, which power seemed to be given by the general terms of the act. The proviso in that statute was "that the rights and interests of the husband, in and to such property, shall in *no way* be affected thereby;" and it was held that by the phrase, "in no way affected," was meant that the wife could not make a will that should affect the husband's rights and interests in any way whatever. *Fletcher,* J., who delivered the opinion of the court, says: "The statute does not say that the rights and interests of the husband to and in her property shall be in no way prejudiced, or impaired, or unfavorably affected, by

the will of the wife, but shall be in no way affected favorably or unfavorably, diminished or increased. The husband shall not be made richer or poorer, but shall be entirely disinterested in regard to the disposition which the wife may make of her property by will." *Wilde* and *Dewey*, justices, dissented from the opinion of the majority of the court, and held that the proviso did not take away the power given by the general terms of the act. They were of opinion that the wife could, by virtue of the statute, make a devise to her husband. They construed the proviso as though it had said, "shall not be impaired thereby."

Had this proviso been expressed in the same language as ours, the whole court would probably have held that it did not impair the general powers given by the act, and that the wife could make a valid devise to her husband. And such would seem to be the proper construction to be put upon our act of 1845. The wife cannot, by that statute, make a will that shall deprive the husband of any interest in her real estate which the marital relation gives him, and thus "affect injuriously" his rights. But the proviso goes no further; and the power to devise generally, which is given in the first clause of the act, would appear to be sufficient to authorize her to make a devise to her husband; still, such power is not given in express terms.

No statute conflicting with the act of 1845, or extending its provisions, was passed until 1854. The act of 1846, (Comp. Stat. 382) providing for ante-nuptial contracts, and for conveyances and bequests to married women, contains no particular provisions empowering the wife to devise her lands; and the courts in Massachusetts have held that a statute of that State, very similar in its provisions, does not extend or enlarge the power of a married woman to make a will. *Beach* v. *Manchester*, 2 Cush. 72.

The act of July 8, 1854, is as follows: "The last will

and testament of any married woman, executed with the formalities and in the manner required for the execution of wills in other cases, shall be proved and allowed in the court of probate in the same manner as the wills of other persons deceased, and shall be valid and effectual as against the heirs at law of such married woman, to pass any estate therein devised, of which she in her own right, and her husband by virtue of the coverture in her right, may be seized, to any devisee therein named, except her husband, in the same manner as if such woman were sole and unmarried at the time of making said will; but no such will shall operate to limit or in any way affect the life estate of the husband as tenant by the curtesy."

No repealing section was incorporated into this act, and no allusion is made to the act of 1845, or to any other. We are, therefore, to take and compare the several acts together, in giving the construction that shall be placed upon them. Such is the rule, where there are different acts of the legislature which are in *pari materia,* and relate to the same subject; because they are considered as having one object in view, and as acting upon one system. And the rule applies, though some of the statutes may have expired, or are not referred to in the other acts—the object being to ascertain and carry into effect the intention of the legislature. 1 Kent's Com. 463 ; *Earl of Ailesbury* v. *Patterson,* 1 Burr. 445 ; Dougl. 30; *Duck* v. *Addington,* 4 Term Rep. 447 ; *Holbrook* v. *Holbrook,* 1 Pick. 254 ; *Com.* v. *Martin,* 17 Mass. 362.

In the construction of a statute, all acts in *pari materia* are to be taken together as if they were one law. *Hayes* v. *Hanson,* 12 N. H. 284. And where, by an act, it is apparent that the legislature intended to revise a statute, the former statutes upon the subject, so far as in conflict with the last, are no longer in force, though not expressly repealed. *Towle* v. *Manett,* 3 Greenl. 22 ; *Nichols* v. *Squire,* 5 Pick. 168; *King* v. *Cator,* 4 Burr. 2026; *King* v. *Davis,* 1 Leach 306.

In *Bartlett & al.* v. *King*, 12 Mass. 545, the court say that a subsequent statute, revising the whole subject matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, on the principles of law as well as in reason and common sense, operate to repeal the former.

Where entire provisions of a statute are revised by a subsequent act, such provisions are repealed by the latter statute. *Leighton* v. *Walker*, 9 N. H. 59 ; *Sumner* v. *Steward*, 2 N. H. 42.

It is also a general rule that statutes are to be construed with reference to the principles of the common law, for it is not to be presumed that the legislature intended to make any innovation upon the common law, further than the case absolutely required. 1 Kent's Com. 464.

The tendency of modern legislation, in this and many other States, has been to enlarge the powers and privileges of the *feme covert*, and to break over many of the well settled principles of the common law; still, on comparing the several acts in this State upon this subject, we think that a wife has not the power to make a will by which her real estate will pass to her husband. All of the acts down to March, 1843, have been expressly held by our courts not to give the power. Since then no act has, in terms, conferred it, although the act of 1845, standing alone, would seem to be broad enough. But the last act, that of 1854, while giving to the wife the power to make a will valid to pass any estate therein devised, of which she may be seized, expressly excepts the husband from being a devisee. This act is explicit in its terms, and must be regarded as showing the true intent of the legislature upon the subject. And should we hold that the act of 1845 gave the power, still the act of 1854, being in conflict with it, and designed to express the will of the legislature in regard to the matter, would operate as a repeal of the former statute. The whole subject matter of each act is embraced in one section, and the second act appears evidently to be a revision of the former.

The will in the present case was made in 1850, but the testatrix did not die till March, 1856. A will does not take effect, nor are there any rights acquired under it, until the death of the testator; and its construction and validity depend upon the law as it then stands. A statute passed after the making of a will, but before the death of the testator, by which the law is changed, takes effect upon the will. To give the statute such a construction is not to make it retrospective in its operation, since it affects no rights vested before its passage. *Loverin* v. *Lamprey,* 22 N. H. (2 Foster) 434; *De Peyster* v. *Clendening,* 8 Paige 295; *Bishop & al.* v. *Bishop,* 4 Hill 138; *Cushing & al.* v. *Aylwin,* 12 Met. 169; *Pray* v. *Waterson,* 12 Met. 262; *Miller* v. *Dennett,* 6 N. H. 109.

As the validity of this will must be determined by the law as it stood at the decease of the testratrix, in 1856, we are of opinion that she was at that time incapacitated to make a will giving her real estate to her husband; that the will at the time of its probate was invalid; and that, consequently, the demurrer must be overruled, and the decree of the judge of probate, approving the will, reversed.