BARNETTE, Judge.
This is an appeal by the principal beneficiary of a trust from a judgment decreeing the trust to exist for the lifetime of the income beneficiary.
Decedent, Annie Winter Rabito, died testate on July 16, 1958. Her will, dated October 24, 1957, reads as follows:
“My name is Annie Winter Rabito. My husband is dead. I have one living child, A. Paul Rabito.
“I give and bequeath to Myrtle May Rabito, daughter-in-law [widow of a predeceased son], the sum of $25,000.00 cash.
“Both my property located at 2014-16 Magazine Street and my property located at 1715 Governor Nicholls Street is to be put in trust. The gross rentals from the said properties are to be paid to Myrtle May Rabito, my daughter-in-law, who shall be the income beneficiary. All of the expenses of the trust, such as insurance, taxes, repairs, etc., are to be paid by my son, A. Paul Rabito, who shall be the principal beneficiary. At the termination of the trust the said properties are to be given to my son, A. Paul Rabito. I appoint Arthur V. Flotte, Attorney-at-Law, Trustee, of the said properties, with bond.
“If Myrtle May Rabito should live after the termination of the trust by operation of law, then in such case it is my desire and earnest request that my son, A. Paul Rabito, continue to pay her the same monthly rentals until her death and shall be paid to her monthly. I further request that my son, A. Paul Rabito, keep her real estate and personal property insured.
“All of the remainder of my property, real, personal and mixed I give and bequeath to my son, A. Paul Rabito.
“I name, designate and appoint my son, A. Paul Rabito, executor of my estate with full seizin and without bond.
“I name, designate and appoint Arthur V. Flotte, Attorney for my estate and for my executor and set his fee at the minimum provided for by the New Orleans Bar Association.”
Following the death of Mrs. Rabito, the trustee opened the succession and in due course executed the trust as above outlined.
By letter dated July 18, 1968, A. Paul Rabito notified Arthur V. Flotte that the trust had terminated and that he desired to be placed in absolute possession of the property which constituted the principal of the trust. In response to the demand Flotte filed a “Petition for Declaratory Judgment” in which he stated that there was a genuine dispute between Mrs. Myrtle May Rabito and A. Paul Rabito as to the actual date of the termination of the trust, it being the position of Mrs. Rabito that the trust continued until her death; and the contention of A. Paul Rabito that the trust terminated ten years from the death of his mother.
On October 11, 1968, judgment was rendered by the district court finding the trust to be limited to ten years’ duration under the provisions of Act 209 of 1952. Upon timely application by the income beneficiary, a new trial was granted. Since the trial date was set during the summer vacation months, the matter was referred to a different division of the Civil District Court for the Parish of Orleans. After hearing, judgment was rendered on December 13, 1960, decreeing the *382 trust to be for the lifetime of the income beneficiary. From this judgment the principal beneficiary has perfected a devol-utive appeal.
As can be seen from the above, the sole issue involved in this matter is a determination of the duration of the trust created by the last will and testament of Mrs. Annie Winter Rabito. An answer to this question involves an interpretation of Act 209 of 1952, amending section 1794 of Title 9 of the Louisiana Revised Statutes of 1950, the law in effect at the time of decedent’s death.[1] Act 209 of 1952 reads as follows:
“Unless an earlier termination is required by the trust instrument or by the proper court, every inter vivos or testamentary trust created under this Chapter, other than such as may be established by employers for the benefit of their employees, shall terminate:
(1) At the expiration of ten (10) years from the settlor’s death as to a beneficiary which is not a natural person;
(2) At the expiration of ten (10) years from the settlor’s death as to a beneficiary who is a natural person or until the death of the beneficiary, whichever is the longer period;
“If the terms of the trust purport to require a period of duration as to any beneficiary longer than the maximum allowable period set forth above, but the trust is otherwise valid under this Chapter, the trust shall be enforced as to such beneficiary for the maximum allowable period, and shall then be terminated.”
Defendant contends that Act 209 of 1952 provides a maximum allowable period of ten years for trusts and the district court was in error in holding that a trust can be established for a longer period. Defendant’s counsel interprets the act, when read as a whole, to indicate legislative intent that a trust instrument may provide for “an earlier termination” or an “earlier termination” may be ordered by a proper court but otherwise the trust will terminate at the end of ten years from the set-tlor’s death.
A review of the historical development of our trust law leaves no doubt of the legislative intent and we must reject defendant’s argument.
The first constitutional provision for a trust law in Louisiana was Article 4, section 16 of the Constitution of 1921, which provided in part:
“No law shall be passed abolishing forced heirship or authorizing the creation of substitutions, fidei commissa or trust estates; except that the legislature may authorize the creation of trust estates for a period not exceeding ten years after the death of the donor; provided, that where a natural person is the direct beneficiary said period may be made to extend until ten years after his majority * *
From a reading of the above it can be seen that the Legislature was authorized to create trusts for a period not exceeding ten years from the death of the donor or in the case of a minor trust beneficiary, ten years after his majority. Pursuant to this mandate, the Legislature passed a comprehensive Trust Estate Act, Act No. 81 of 1938, which later became LSA-R.S. 9:1791 through R.S. 9:2212. Section 2, subsection (7) of the act provided:
“The term ‘maximum allowable period’ shall mean the longest possible time that a trust may exist under the limitations set out in Section 4 [of that act].”
*383 Section 4 of the act provides:
“Unless an earlier termination is required by the trust instrument or by the proper court, every inter vivos or testamentary trust created under this Act shall terminate at the expiration of ten years from the settlor’s death as to a beneficiary which is not a natural person, at the expiration of ten years from the settlor’s death as to a beneficiary who is a natural person and of full age at the settlor’s death, and at the expiration of ten years from the beneficiary’s majority as to a beneficiary who is a natural person and a minor at the settlor’s death. If the terms of the trust purport to require a period of duration as to any beneficiary longer than the maximum allowable period set forth in the preceding sentence, but the trust is otherwise valid under this Act, the trust shall be enforced as to such beneficiary for the maximum allowable period and shall then be terminated.”
Thus it can be seen that Act 81 of 1938 followed the dictates of Article 4, section 16 of the Constitution of 1921 and limited trusts to ten years for a beneficiary who is a natural person and of the age of majority.
In 1952, Article 4, section 16 of the Constitution of 1921 was amended. Section 3 of Act No. 208 of 1952, by which the amendment was submitted for adoption, provided:
“That on the offical ballot to be used at said election, there shall be printed:
FOR the proposed amendment to Section 16 of Article IV of the Constitution of the State of Louisiana extending the term of trust estates and authorizing the creation of trust by employers for the benefit of their employees.
and also:
AGAINST the proposed amendment to Section 16 of Article IV of the Constitution of the State of Louisiana extending the term of trust estates and authorizing the creation of trusts by employers for the benefit of their employees, and each elector voting on said propositions for so amending said Section 16 of Article IV of the Constitution of the State of Louisiana, shall indicate his vote relative thereto, in the manner provided by the general election laws of the State of Louisiana.” (Emphasis added.)
The constitutional amendment was adopted at the general election of November 4, 1952, and became effective law on December 10, 1952. Article 4, section 16 of the Constitution as thus amended then read, in pertinent part, as follows:
“ * * * No law shall be passed authorizing the creation of substitutions, fidei commissas or trust estates; except that the legislature may authorize the creation of trust estates for a period not exceeding ten years from the settlor’s death as to a beneficiary which is not a natural person; ten years from the settler’s [sic] death as to a beneficiary who is a natural person or until the death of the beneficiary whichever is the longer period; and provided further that this prohibition as to trust estates or fidei commissa shall not apply to donations strictly for educational, charitable, religious purposes or trusts created by employers for the benefit of their employees.”
Concurrent with the passage of the act to amend Article 4, section 16 of the Constitution, the Legislature passed Act No. 209 of 1952. Upon the adoption of the constitutional amendment at the general election, Act 209 became effective law, amending LSA-R.S. 9:1794. This act reads, in part, as follows:
“Unless an earlier termination is required by the trust instrument or by the proper court, every inter vivos or testa *384 mentary trust created under this Chapter * * * shall terminate:
* * * * *
(2) At the expiration of ten (10) years from the settlor’s death as to a beneficiary who is a natural person or until the death of the beneficiary, whichever is the longer period * *
Act 209 tracks verbatim the language of Act 208 pertaining to the duration of trust. Clearly, the intent of the Legislature was to extend the maximum term of trust estates beyond the ten-year period then provided by Article 4, section 16 of the Constitution and LSA-R.S. 9:1794. Section 3 of Act 208 in submitting the proposed constitutional amendment, significantly provides for voting for or against “ * * * extending the term of trust estate * *
Counsel for defendant interprets the last paragraph of Act 209 as meaning that the Legislature contemplated a situation where a natural person beneficiary of a trust might die within ten years of the settlor’s death, in which event the trust would then continue until the tenth anniversary of the settlor’s death; thus, he interprets ten years from the settlor’s death to be the “maximum allowable period * * He argues the phrase “whichever is the longer period” in the preceding paragraph has no meaning. He reasons that had the Legislature used the word “shorter” instead of “longer” it would have indicated legislative intent to effect a possibly shorter time than ten years from the settlor’s death. From this he concludes the intent of the Legislature to be in any event to extend the trust to a period of ten years, but no longer.
We must reject this argument. There cannot be any doubt that the Legislature, by submitting for approval a constitutional amendment “ * * * extending the term of trust estates * * and the enactment of Act 209 of 1952, clearly intended an extension beyond the then constitutional limit of ten years.
Counsel for defendant has further argued that Act 209 of 1952 is ambiguous and therefore ineffective in that it uses the word “beneficiary” without designating if it means the “income beneficiary” or “principal beneficiary,” hence the phrase “until the death of the beneficiary” is not clearly indicative of legislative intent.[2]
In the case before us, the set-tlor (testatrix), Mrs. Rabito, did in fact name two beneficiaries: (1) her daughter-in-law as “income beneficiary,” and (2) her son as “principal beneficiary”; and both may therefore be said to be beneficiaries of the testamentary trust. It is our opinion that Act 209 of 1952, the applicable law in this case, refers only to the “income beneficiary” who, in this case, is Myrtle May Rabito, upon whose death the trust will terminate since she has lived beyond ten years from the death of the settlor.
Having reached the foregoing conclusion, it is unnecessary to consider defendant’s argument that the following provision of the will is precatory and not enforceable:
“If Myrtle May Rabito should live after the termination of the trust by operation of law, then in such case it is my desire and earnest request that my son, A. Paul Rabito, continue to pay her the same monthly rentals until her death and shall be paid to her monthly. I further request that my son, A. Paul Rabito, keep her real estate and personal property insured.”
It is apparent that the testator was aware of the possibility of a judicial interpretation of the trust act to defeat her *385 intent in behalf of her daughter-in-law and sought by this provision to place upon her son the moral, if not legal, obligation to carry out her wishes in this respect. We agree that this is a precatory provision, but it is of no consequence in view of our opinion that the trust has not terminated.
For the foregoing reasons, the judgment appealed from is affirmed at appellant’s cost.
Affirmed.

. While LSA-R.S. 9:1794 as amended and reenacted by Act 209 of 1952 is the law applicable to the case, it is no longer in effect having been superseded by the provisions of Act 74 of 1962, and finally by Act 338 of 1964, the new Louisiana Trust Code.

. Defendant's argument in this respect might find some academic support, see Oppenhoim, A New Trust Code for Louisiana : Some Basic Policy Considerations, 23 La.L.Rev. 621 (1963) ; Oppenheim, Why a Revision of the Louisiana Trust Estate Act is Necessary, 18 La.L.Rev. 599, 600 (1958).