JAMES K. REDD, propounder, plaintiff in error, *vs.* SOPHIA W. HARGROVES *et al.*, defendants in error.

On the 25th of February, 1852, Owen Thomas made and executed his will, by one clause of which he desired that certain negro slaves therein named should be conveyed to Liberia, or any other free State foreign to Georgia, unto which they might severally elect to go, and in which they might lawfully reside, and there to be forever manumitted and freed, they and their posterity. The testator also desired that his other property should be sold, and out of the proceeds thereof, after the payment of his debts and certain specific legacies therein named, and after the defrayal of the expenses incident to the execution of his will, the subsistence and removal to the new and contemplated homes of the negroes intended to be manumitted, that the residue should be divided among his negroes who should thus become free, to be paid to each person eighteen years of age, on his or her arrival in his or her new home. In 1859 the Legislature passed an Act which declared "that *from and after the passage of this Act* any and every clause in a deed, will, or other instrument, made for the purpose of conferring freedom on slaves directly or indirectly, within or without the State, to take effect after the death of the owner, shall be absolutely void." The testator died in September, 1868, never was married, and left no children at his death: *Held*, that inasmuch as the testator violated no law of the State at the time of the execution of his will in 1852, that the same remained ambulatory until the time of his death in 1868, at which time the Act of 1859 had become *obsolete*, and that the Act of 1859 did not, in law, operate upon and revoke the testator's will made in 1852, there being no *act* of the testator showing that it was *his intention* to revoke the same.

*Held further*, That it is a cardinal rule, in the construction of wills, to carry into effect the *intention* of the testator, when such intention violates no law of the State, and as the testator violated no law of the State in the *expression of his intention*, in regard to his slaves, at the time of making his will, and as there was no law in existence at the time of his death which forbid the execution of *that intention*, the same should be carried into effect by the Courts. The will of the testator was valid in its *inception* (to-wit) at the time it was made, and was a valid will at the time of its *consummation* (to-wit) at the time of the testator's death.

Emancipation by Will.  Before Judge WORRILL.  Muscogee Superior Court.  May Term, 1869.

Redd propounded, as the last will of Owen Thomas, a paper, duly executed on the 25th of February, 1852, containing the following bequests.

Redd *vs.* Hargroves *et al.*

"ITEM 1st. I desire all the debts I may owe, if any, promptly paid.

ITEM 2d. I give and bequeath to Thackery B. Howard's wife, and her children, the debts and demands of every kind I hold upon him, and the moneys accruing or to accrue thereon, exclusive of the husband and his creditors.

ITEM 3d. I desire that my negroes, Griffin and his wife Esther, and their children now born, and such as they may hereafter have, (and others with their children born or to be born, naming them,) to be conveyed to Liberia, or any other free State, foreign to Georgia, into which they severally elect to go, and in which they may lawfully reside, and there to be forever manumitted and freed, they and their posterity.

ITEM 4th. I desire all the residue of my negroes, my lands, stocks, crops and property of every kind sold for cash, and the proceeds of sales, along with moneys in hand, collections of debts of every class due me, (excepting always the debts of Thackery B. Howard, as specified,) converted into a common fund, to be disposed of as follows, viz: so much as may be required to the payment of debts, the defrayal of the expenses incidental to the execution of my will, the subsistence and removal to their new and contemplated homes of such of my negroes as are intended to be manumitted and freed, and the residue by eventual division among my negroes who shall thus become free.

ITEM 5th. I give to my executors, each, the sum of $1,500 00 as fixed and full compensation for the execution of this will; to Griffin (the father) and Maria, each, the sum of $2,500 00, exclusive of, and additional to, what they receive in common with the other freed negroes. These several sums being abstracted and appropriated, I wish the remainder divided into as many parts as there are freed negroes in number, and one part paid to each person eighteen years of age, on his or her arrival in his or her new home, without regard to marriage or sex, including said Griffin and Maria, and the remaining parts divided among the parents of children in the precise proportion the several families of children to each other.

ITEM 6th. The bequest to Mrs. Thackery B. Howard, to-wit, Sarah G. and her children, is designed to include children she may have hereafter, as well as those now born, to be a joint one to Mrs. Howard and her children, and to be sole and separate to her use as between her and her husband and the creditors of the husband, and to include the transfer, assignment and control of a mortgage, with its lien, made by said Howard to me on the nineteenth day of February, eighteen hundred and forty-nine, and under judgment of foreclosure in the Court of Chancery in Russell county, Alabama, at this time, as more especially provided for in a separate instrument of even date with this, attested by the same witnesses, and which I hereby recognize and confirm as part and parcel of this my last will and testament.

ITEM 7th. I nominate and appoint James K. Redd, of Muscogee, in the State of Georgia, and Augustus Howard, of the county of Russell, in the State of Alabama, executors of this my last will and testament."

Sophia Hargroves *et al.*, heirs-at-law, filed a caveat thereto, upon the following grounds:

1st. Said writing was prohibited by the statutes of Georgia.

2d. It is a writing which cannot possibly be executed as a will, or otherwise.

3. It contains divers conditions which were to happen or be performed before any legacy to any negro therein mentioned could vest or have any effect, and which conditions are not fulfilled nor can be fulfilled.

4. It was the testator's intention that the writing should not have effect as a will unless his negroes therein mentioned and referred to should remain with him as his slaves until his death, and during all that time should serve and obey him as his slaves; and these caveators say that long before the death of said Owen Thomas, viz: three years, the said negroes accepted the emancipation proclaimed by the President and confirmed by the State Convention, and abandoned and deserted the said Thomas, and never again acknowledged him as master or served him as slaves.

5th. Said writing, if ever valid as a will, was revoked

Redd *vs.* Hargroves *et al.*

and annulled by the Act of 1859, "To prohibit the *post mortem* manumission of slaves," and the same was never afterwards republished as the will of said Thomas, or otherwise revived.

6th. The change of circumstances brought about by emancipation is so great as not only to authorize, but to require, the presumption that it was not the intention of said Thomas at the time of his death that said writing should be his will.

It was pending on appeal in the Superior Court.

It was admitted that Thomas died on the 28th of September, 1868, without having ever married, and that said paper was his last will and testament, unless said grounds of caveat rendered it a nullity.

The Court charged the jury that all of said paper was void, except the 1st, 2d, 6th and 7th items.    This is assigned as error.

RAMSEY & RAMSEY, INGRAM & CRAWFORD, WILLIAMS & THORNTON, for plaintiff in error, said the paper was good as a will when made, (1852,) unless prohibited by Acts of 1801 and 1818, and they did not prohibit it: Vance vs. Crawford, 4th Ga. R., 445; 10th Ga. R., 263; 16th Ga. R., 517; 18th Ga. R., 130; 19th Ga. R., 35; 31st Ga. R., 38; 25th Ga. R.; 109, 428; 38th Ga. R., 655. It was good at Thomas' death, (1868): Constitution 1865, Art. 5, par. 4; Constitution 1860, Art. 11, sec. 3: Act of 1859 did not effect this will made *before* it and taking effect *after* it. The law at the death must control: 18th Ga. R., 1; 25th Ga. R., 660; 23d Ga. R., 431; 38th Ga. 61; Code, sec. 2364: In any event Redd's appointment was good: 22 Ga. R., 30.

J. M. RUSSEL, H. L. BENNING, PEABODY & BRANNON, for defendants, said a will has *virtue* from its date, though it takes effect only after death of testator. If made by an insane man, his subsequent sanity does not make it good, and *vice versa*: 1 Williams' Ex'rs, 17 marg.; Ibid. 103, note vv; 1 Russ & M., 355. So of a minor's will: Sec. 2371 Code. Will of *feme sole*, destroyed by coverture, but not restored by death of husband: Wms. Ex'rs, 106; 2 Brown's Ch., 544;

2 Tenn., 695, 697; 4 Coke R., 60, and so in many like cases; 1 Wms. Ex'rs, 106; 1 Phillim, 342; 1 Lord Raymond, 441; 2 Sol. K., 192; 4 Burr, 2167, 2171; Irwin's Code, sec. 2362, 2435; Jarman's 4th Rule; Redfered on Wills, part 1, 425, note 6. Having force from its date, it was void by reason of emancipation of slaves: Act 1859; section 1878, 4905 New Code. Nor is republication presumed: Irwin's Code, sec. 2442, 2436; 1 Jar. on Wills, 112; 1 Phil. 339, 442; 4 John. Ch. R., 515, 519; 1 Robt. on Wills, 326; 2 P. Wms., 524; 2 Bl. Com., 499; 4 Burns' Eccl. L. C., 47; 2 T. R., 624; 1 Redfered on Wills, 293–4, sec. 5; Ibid. 2d part, 669, sec. 19; 1 Roper on Leg., 250; 1 Jarm. 132–3; Brown's Law Max., 77; Act 1859 not repealed; New Code, sec. 4984. Repeal does not make good a void paper: Dwar: on Stat., 675; 34 Ga. R., 483. Subsequent change can not affect vested rights: Irw. Code, secs. 4903, 4906. If bequest be to servants and they quit service, it is adeemed. 2 Wms. on Ex'rs, 833; 2 Ch. R., 162; 8 Vin. Abridg., 311. So if they be sold: 14 John. R., 324; 1 Wms. on Ex'rs, 112, note 1. *Cy pres* applies only to charities: Cobb's N. D., 983; New Code, secs. 1876, 1878; Irwin's Code, sec. 3099; 2 Story's Eq., sec. 1182–3. Emancipation was a war measure: Con. 1865; Irwin's Code, sec. 4909; 2 Story's Eq., secs. 1182–3–4. The charitable intent not yet manifest and definite: Irwin's Code, sec. 3099; 18 Ga. R., 129, 135; 21 Ga. R., Drane ex'r, vs. Beall; 22 Ga. R., 28; 34 Ga. R., 460, 483. If circumstances change, presumptive change of testator's wishes: 1 Wms. on Ex'rs, 104–112, inclusive; Irwin's Code, sec. 2362, 2368; 1 Rob. on Wills, 355; 1 Ross on L., 123; 4 Ves., 808; 2 Ch. R., 162; 2 Wms. on Ex'rs, 834; 1 Red. on Wills, 425, note (a.) If will takes effect at death only, there were no slaves, and therefore it is void. Every clause for emancipation is void, and executors were appointed for that purpose, and their appointment is void: 22 Ga. Rep., 28; 21 Ga. Rep., 21. The heirs are favored: Powell on Dev., 548; 2 Vern., 340; 1 Jarm., 465; 12 Ga. R., 163. Statutes, etc., may take away right before death of testator: 25th Ga. Rep., 650. Statute of Uses: 1 Roll's

Redd *vs.* Hargroves *et al.*

Abridg., 617 ; Dev. Anderson's R., 7 ; 18 Ga. R., 1 ; 2 P. Wms., 624 ; 2 Brown's Ch., 534 ; Ansb., 627 ; 2 Bl. Com., 499 ; 4 Burns' Eccl. L., 647 ; 4 R., 60 ; 1 Phil., 342 ; Irwin's Code, sec. 2445 ; Powell on Dev., 516, 517, 530, 547–8 ; Doug. R., 38 ; 1 Phil., 342 ; 2 Ch. R., 162.   If condition impossible, will bad : Dudley's R., 94 ; 2 Vesey's R., 340 ; Bl. Com., 157.   Precedent conditions must be literally performed : 1 Ves. R., 83 ; 1 Ves., Sr., 191 ; 2 W & S., 146 ; 2 Bl. Com., 154 ; 6 Ves., 608.

WARNER, J.

On the 25th of February, 1852, Owen Thomas, the testator, made and executed his will, by one clause of which he desired that certain negro slaves therein named should be conveyed to Liberia, or any other free State foreign to Georgia, unto which they might severally elect to go, and in which they might lawfully reside, and there be forever manumitted and freed, they and their posterity.   The testator also desired that his other property be sold, and out of the proceeds thereof, after the payment of his debts and certain specific legacies therein named, and after the defrayal of the expenses incident to the execution of his will, the subsistence and removal to their new and contemplated homes of the negroes intended to be manumitted, the residue should be divided among his negroes who should *thus become free*, to be paid to each person eighteen years of age, on his or her arrival in his or her new home.   The testator died in the month of September, 1868 ; never was married, and left no children at his death.   In the year 1859, six or seven years after the execution of the will by the testator, the General Assembly of this State passed an Act declaring " that *from and after the passage of the same,* any and every clause in a deed, will, or other instrument, made for the purpose of conferring of freedom on slaves directly or indirectly, within or without the State, to take effect after the death of the owner, shall be absolutely void."   It is insisted here, that this Act of the General Assembly operated upon, and had the effect, to revoke the will of the testator, made in 1852,

Redd *vs.* Hargroves *et al.*

at least so far as it related to the manumission of his slaves, and that inasmuch as he died without any republication of his will after the slaves became free, he died intestate as to the bequests and provisions made to and for them thereon.

The first question to be considered is, whether the Act of 1859 revoked the testator's will made in 1852? At the time the will was executed it was a lawful and valid will under the then existing laws of this State. Did the Act of 1859 have a *retroactive* operation so as to defeat the *legal* expressed intention of the testator as contained in his will of 1852, so as to revoke the same without any *act* on his part? In our judgment the Act of 1859 did not, and could not, upon any sound principle of construction have that effect. All laws (says Blackstone) should be made to commence *in futuro*, and be notified before their commencement, which is implied in the term "*prescribed*": 1st Blackstone Commentaries, 46. Laws prescribe only for the future, they cannot impair the obligation of contracts, nor generally have a *retrospective operation*: Code, section 6. Besides, the Act of 1859, by its express terms, was not to take effect until *from and after its passage*. A will, as defined by the Code, is the legal expression of a man's wishes as to the disposition of his property after his death: Code, section 2359. A testator, by his will, may make *any disposition of his property*, not inconsistent with the laws, or contrary to the policy of the State: Code, 2364. At the time the testator made his will, (in 1852,) and expressed his wishes as to the disposition of his property after his death, his expressed wishes were *legal*, not inconsistent with the laws of the State, or contrary to the policy thereof, as has been repeatedly adjudicated by this Court. It is true that his will did not take effect as *his will* until after his death, but he had the *legal* right to make it at the time and in the manner he did, so that it *might* take effect after his death as to the disposition of his property, a *legal right* which the laws of the land expressly conferred upon him. When the testator had exercised this *legal right*, and made his will, the presumption of the law is against its revocation: 1st Williams on Ex'rs, 92.

Redd *vs.* Hargroves *et al.*

There is no pretence in this case that the testator's will was revoked by any *act* or *expressed intention* on his part, and the only *implied* revocations of a will, recognized by the Code, are when the testator has executed a subsequent inconsistent will, the marriage of the testator, or the birth of a child to him subsequent to the making his will, in which no provision is made in contemplation of such an event: Code, 2435, 2441. It is a cardinal rule in the construction of wills to carry into effect the expressed intention of the testator when such intention violates no law of the State. The testator in this case clearly intended to manumit his slaves, and to bequeath to them property as *freemen,* where they could enjoy it as such freemen, and hence the provisions in his will to carry into effect that intention; but before his death the laws which prohibited them from enjoying their freedom *here* became *obsolete ;* in other words, freedom came to them instead of their having to seek it under the provisions of the testator's will. The intention of the testator, when he made his will, was, that they should be *free,* and they being free at the time of his death, when the will took effect, his intention was carried out, though not in the manner contemplated when the will was made; but their freedom *now* is entirely consistent with his intention *then,* as expressed in his will upon that subject.

In the construction of legacies given by a will, the Court will seek diligently for the *intention* of the testator, and give effect to the same as far as may be consistent with the rules of law: Code, 2420. The will of the testator was valid at the time of its inception, (to-wit) at the time it was made, (in 1852,) and was a valid will at the time of its consummation, (to-wit) at the time of the death of the testator, not having been revoked by any act of the testator, or by operation of law. The testator violated no law of the State in expressing his intention in regard to his slaves at the time he made his will, and no law of the State will be violated in now carrying into effect that intention, as the same is presumed to have existed at the time of his death.

As it was clearly the *intention* of the testator that his slaves

should be *free* and enjoy the property given to them by his will, as *freemen;* it is the duty of the Court to carry into effect *that intention*, which, under the present existing laws of the State, can as well be done *here* as in Liberia, or in any other foreign State; they are now free *here*, and can enjoy their freedom *here*, and being free *here*, they can receive and enjoy the property bequeathed to them by the testator *here*, as such freemen, in accordance with the expressed wishes of the testator, as contained in his will at the time of his death.

Let the judgment of the Court below be reversed.