Donna I. Read DOUGLAS, James L. Read and Joanne Read Trumper, Appellants (Plaintiffs),

v.

Donald L. NEWELL and Earl R. Cherry, Jr., Personal Representatives of the Estate of Elizabeth Newell, Appellees (Defendants).

Donald L. NEWELL and Earl R. Cherry, Jr., Personal Representatives of the Estate of Elizabeth Newell, Appellants (Defendants),

v.

Donna I. Read DOUGLAS, James L. Read and Joanne Read Trumper, Appellees (Plaintiffs).

Nos. 85–105, 85–106.

Supreme Court of Wyoming.

May 16, 1986.

Rehearing Denied June 6, 1986.

Eric M. Alden of Jones, Jones, Vines & Hunkins, Wheatland, for appellants (plaintiffs) in No. 85–105 and appellees (plaintiffs) in No. 85–106.

Donald E. Jones of Jones and Graham Law Offices, Torrington, for appellees (defendants) in No. 85–105 and appellants (defendants) in No. 85–106.

Before THOMAS, C.J., and ROONEY,* BROWN, CARDINE and URBIGKIT, JJ.

ROONEY, Justice.

Plaintiffs (appellants in Case No. 85–105 and appellees in Case No. 85–106) brought an action for declaratory judgment construing the will of Elizabeth Newell (hereinafter referred to as "deceased") with respect to the occurrence or nonoccurrence of the ademption of a specific devise contained in Article X of the will, contending that it did not adeem. Defendants (appellees in Case No. 85–105 and appellants in Case No. 85–106) presented, as an affirmative defense, a contention that Article X had lapsed at the death of deceased's husband. Both parties moved for a summary judgment. The trial court granted plaintiffs' motion on the issue of lapse—i.e., Article X did not lapse—and it granted defendants' motion on the issue of ademption—i.e., Article X did adeem. Both parties appealed from the judgment.

The unanimous court affirms the decision that Article X had not lapsed, and a majority of the court determines that the specific bequest did not adeem, with which determination I dissent.

Deceased and her husband owned real property in Nebraska and Wyoming. Deceased owned a percentage interest in real property in Converse County as a result of inheritance from a brother. The remaining percentage was owned by other relatives of deceased and of her brother.

A Nebraska attorney prepared wills for deceased and her husband which were executed at Mitchell, Nebraska, on September 19, 1969. Article II of deceased's will provided in part:

"I give and devise unto my husband, Louis Newell, if he shall survive me, all my real estate and interest therein, whereso-ever situated, except however, any interest I may own in real estate in Converse County, Wyoming, which I inherited from my deceased brother, Frederic S. Read, which is disposed of in Article X of this will * * *."

Article III thereof provided in part:

"If my husband shall have predeceased me, I devise and bequeath all my property, both real and personal, unto my Trustees * * *."

The beneficiaries of the trust were the two grandsons of deceased and their issues. In Article X of her will, deceased gave, devised and bequeathed to two nephews and two nieces, three of whom are plaintiffs,

" * * * all of my interest and title in the real estate located in Converse County, Wyoming, which I inherited from my deceased brother, Frederic S. Read * * *."

Deceased's husband did predecease her.

On January 28, 1980, deceased and the other owners of the Converse County property executed a contract for a warranty deed in consideration of payments to be made over a five-year period. Deceased died on May 16, 1982. At that time $192,522 was due to her under the contract for deed. Two more annual payments were made under it, but there was a default on the final payment, which payment was due January 15, 1985.

As noted, the ultimate issue in this case is whether or not the disposition of the Converse County property is controlled by Article X of the will. Article X does control if it did not lapse upon the death of deceased's husband and if an ademption did not occur as to it when the property to which it pertained was sold under the contract for deed. Defendants contend that it did lapse and that Article III controls the disposition of the property. They further

* Retired November 30, 1985.

contend that if Article X did not lapse, the ademption occurred.

## LAPSE—CASE NO. 85–106

Both parties seem to recognize that there is an ambiguity in the will and that the construction of the will is to be resolved by determining the intent of deceased as such appears from a full and complete consideration of the entire will when read in the light of the surrounding circumstances. We have recently held such to be the law in *In re Estate of Croft*, Wyo., 713 P.2d 782 (1986). We need not repeat that which was said there.

Defendants construe Article II of the will as designating the Converse County property as that which should not pass to deceased's husband in any event; that such direction is not conditioned on the fact that he survive her; that Article X was intended to relate to, and be a part of, Article II, thus being effective only if the husband survived deceased; and that Article III, therefore, disposed of such property. Plaintiffs contend that Article II and Article X are two distinct provisions and that all of the provisions of Articles II, III and X can be given effect only if this distinction is recognized. They argue that defendants' literal interpretation of Article III would destroy the provisions of Article X.

These contentions evidence the ambiguity. See *In re Estate of Lendecke*, 79 Wyo. 27, 329 P.2d 819 (1958). Either Article X stands alone in disposition of the Converse County property or Article III disposes of such since deceased survived her husband.

In resolving the ambiguity in this will, we place great weight on the fact that Article III is a general provision whereas Article X is a specific one. *In re Estate of Deutsch*, Wyo., 644 P.2d 768 (1982).

" 'Where there is an inconsistency between a general and a specific provision, the latter will prevail * * * regardless of the order in which it stands in the will, but especially where the specific follows the general.' " *In re Estate of Len-*

*decke*, 329 P.2d at 822, quoting from 95 C.J.S., Wills § 621 at 873 (1957).

"While the will of testator is to be construed as an entirety and all provisions therein are to be rendered consistent with each other, it not infrequently happens that the general intent of testator as deduced from the consideration of the will as a whole, is at variance with a particular direction of some clause. * * In such a case, the court, while avoiding making a will for a man who did not succeed in making one for himself, will, nevertheless, if the general intention of the testator is clear, give effect to such intention, disregarding the particular intent of the particular clause." 4 Bowe-Parker: Page on Wills, § 30.11 (1961).

We agree with the trial court's determination that at the time the will was made the original testamentary scheme of distribution and the intent of deceased as expressed in the entire will were to have the real property received by her from her brother pass to plaintiffs under Article X; that the specific provisions in Article X prevail over the general ones in Article III; and that Article X did not lapse upon the prior death of deceased's husband.

URBIGKIT, Justice.

## ADEMPTION—CASE NO. 85–105

This court having determined through the opinion of Justice Rooney that Article X of the will did not lapse, the question is pertinent as to whether or not it was subject to ademption by virtue of the disposition of the subject matter of the devise prior to deceased's death; i.e., whether or not the Converse County property was no longer the property of deceased at the time of her death as a result of the contract for deed.

The interest in question was a 29.17 per cent ranch land ownership inherited by decedent Elizabeth Newell from her brother. That ranch, called the Read lands, was jointly sold by the co-owners by installment contract.

The case contestants are the members of the Read family (nieces and nephews), as

the beneficiaries of the special devise in the Read lands, contesting with the grandchildren, who are the residual devisees. The original intent of the decedent at the time of will execution to leave the Read lands to the Read family members is not seriously in question; what is involved is the query: whether the original intent will be abrogated by ademption.[1]

Sequentially, the following occurred: September 19, 1969, decedent and her husband executed their will in Nebraska, prepared by a Nebraska attorney. Thereafter, on January 1, 1977, the Nebraska Uniform Probate Act became effective, which abolished ademption for the kind of transaction involved in this case. In the Fall of 1979 and early 1980, the Read lands were sold by the individual interest owners, under a joint installment contract. Prior thereto, on March 6, 1979, Wyoming had enacted its own new probate code, to be effective April 1, 1980, and thereafter, on May 16, 1982, Elizabeth Newell died.

The case in this aspect questions whether the remaining balance of $192,522 due to the decedent on the installment contract should go to the grandchildren or the nieces and nephews.

The pathway in this case, whereby the original intent of the will was avoided by trial-court decision, encompasses the following substantive concerns:

(1) Wyoming, for the first time, would now judicially adopt ademption by extinction through application to this will.

(2) The present probate code, effective April 1, 1980, would generally not be effective as to a will earlier executed.

(3) The application of the equitable conversion classification rule to remaining proceeds of an installment contract would destroy the interest and title to the real estate bequest defined in the will and by definition would cause the devise to extinguish.

(4) Without regard for execution in Wyoming, Wyoming rather than Nebraska law would apply to a construction of the will.

Excluding the interests of the present litigants in the sale balance remaining, the importance of this case in the future framework of Wyoming probate law cannot be overstated. The effective-date decision of this opinion will singularly affect Wyoming probate practice in the multiple regards that the recent legislation has significantly changed the entire probate code.[2]

The history of Wyoming probate law changed through two enacted and vetoed

---

1. The will provided in Section X:
   "I give, devise, and bequeath all of my interest and title in the real estate located in Converse County, Wyoming, which I inherited from my deceased brother, Frederic S. Read, to the following named persons in equal shares:
   "(1) Malcolm R. Johnson, my nephew * *.
   "(2) Joanne Read Trumper, my niece * * *.
   "(3) Donna I. Read Douglas, my niece * *.
   "(4) James L. Read, my nephew * * *."
   Section II provided:
   "I give and devise unto my husband, Louis Newell, if he shall survive me, all my real estate and interest therein, wheresoever situated, except however, any interest I may own in real estate in Converse County, Wyoming, which I inherited from my deceased brother, Frederic S. Read, which is disposed of in Article X of this will * * *."

2. Although in itself not inclusive of all subjects that could be covered, including recent legislation in addition to the probate code of 1980, attention is directed to Appendix I, *Source and*

*Status of the Wyoming Probate Code of 1980*, XVI Land & Water L.Rev. 389 (1981), for an analysis of the current probate code. The total scope of actual change is immediately obvious. Less than one-third of the provisions of the present law can be found in realistically similar terms in prior statutory provisions. Noteworthy are the significant structural change of the law as implicated by inclusion of original draftsmanship, adoption of provisions from the Uniform Probate Code and also significant adaptations from the probate law of Iowa.

In addition to that compilation, see also the discussion by Professor Averill on the Uniform Probate Code as a part of it was subsequently included in the Wyoming probate act of 1980. See Averill, *Wyoming's Law of Decedents' Estates, Guardianship and Trusts: A Comparison With the Uniform Probate Code—Part I*, VII Land & Water L.Rev. 169 (1972); Id., *Part II*, VIII Land & Water L.Rev. 187 (1973); Id., *Part III*, IX Land & Water L.Rev. 567 (1974); Id. *Part IV*, X Land & Water L.Rev. 155 (1975).

bills generally adopting the Uniform Probate Code in 1975 (House Bill 44, Digest of House Journal 1975, pp. 69, 71) and 1977 (Senate File 10, Digest of Senate Journal 1977, pp. 20, 32) to the appointment of the special governor's committee, culminating in the probate act of 1980. See Ch. 142, S.L. of Wyoming 1979; Ch. 54, S.L. of Wyoming 1980; and further amendments. Ch. 151, S.L. of Wyoming 1981 reflects the legislative commitment to modernize and improve prior Wyoming probate law which, by any fair analysis, hardly then justified even its 1890 derivation.

The specific initiation of modernization efforts reached the Joint Judiciary Committee of the legislature, chaired by now United States Senator Alan K. Simpson, from recommendations of the Wyoming State Bar Committee on the Uniform Probate Code, in 1973. See Legislative Service Office records, Joint Judiciary Committee 1973–1974.

The Uniform Probate Code was first introduced in its complete form by Senator Richard Jones as Senate File No. 32, in the legislative session of 1973. The intent to significantly change existing law is reflected by committee documents, including specifically a comparison chart prepared by Professor Lawrence H. Averill of the University of Wyoming College of Law, a

member of the Bar committee. See legislative committee records supra.

## I

### Court Adoption of Ademption by Extinction at This Time

■ We will not apply this principle of construction, at this late time and when the legislature has otherwise determined, to create by judicial rule ademption by extinction, and thus defeat testator intent. This is the first case coming before this court to promulgate the principle as a rule of the law, and it would do so in a fashion that could only apply to wills predating passage of the current law. Since the legislature has determined that the principle is inappropriate, we will not embrace this outmoded principle for application in this case, and more particularly as only applicable to wills written and not later revoked predating April 1, 1980.

This can properly be done by utilization of the determinative question of actual intent without the artificiality of implied construction derived from Roman law, to be followed by *Lord Thurlow's Ghost of Ashbruner v. MacGuire*, 29 Eng.Rep. 62 (Ch. 1786).[3]

---

3. Several interesting articles are available, including Paulus, *Ademption by Extinction: Smiting Lord Thurlow's Ghost*, 2 Tex. Tech L.Rev. 195 (1970–1971). See also Page, *Ademption by Extinction: Its Practical Effects*, 6 Wis.L.Rev. 11 (1943); Note, *Wills, Ademption and Legacies in Oklahoma*, 14 Okla.L.Rev. 108 (1961); Comment, *Ademption in Iowa—A Closer Look at the Testator's Intent*, 57 Iowa L.Rev. 1211 (1972); Note, *Ademption and a Testator's Intent*, 74 Harvard L.Rev. 741 (1960–1961); Note, *Wills: Ademption of Specific Legacies and Devises*, 43 Cal.L.Rev. 151 (1955); Mechem, *Specific Legacies of Unspecific Things, Ashbruner v. MacGuire Reconsidered*, 87 U.Pa.L.Rev. 546 (1939); Mechem, *Why Not a Modern Wills Act*, 33 Iowa L.Rev. 501, 514 (1958); Recent Cases, *Wills—Implied Revocation—Effect of Adoption of Child Subsequent to Execution*, 5 Vand.L.Rev. 125 (1951); Comment, *Wills—Ademption Inapplicable Where Contract of Sale Follows Specific Defense of Law*, 49 Iowa L.Rev. 623 (1964); Note, *Ademption by Extinction: The Form and Substance Test*, 39 Va.L.Rev. 1085 (1953); Warren,

*The History of Ademption*, 25 Iowa L.Rev. 290 (1940); Chaffin, *The Time Gap in Wills*, 6 Ga.L. Rev. 649, 675 (1971–1972).

The subject is best summarized in the law journal article authored by Page, supra, 6 Wis.L. Rev. at 38:

"The single instance, which we have been considering, of a rule of law which was worked out in order to give effect to the probable intention of the average testator, and which has ended by defeating such intention far more often than it has given effect to it, can be matched in our law again and again. It is not the fault of either courts or legislatures that as prophets they fall short of perfection when they try to read the future. It would seem to be a serious defect in the development of our law that it has thus far seemed unnecessary to make any attempt to find out whether our surmises and prophecies come true; and, if they do not, how the law can be made better when once its actual working has been studied scientifically."

Many caustic critiques are available, but the subject is well summarized:

"The present mechanical rule of ademption has little relation to the factors relevant in determining whether the testator would wish that the legatee take an economic equivalent." Note, *Ademption and the Testator's Intent*, 74 Harvard L.Rev. 741, 750 (1960–1961).

The author, with pessimism, then observed that there would be more than a little judicial hesitancy in overruling the doctrine, and concluded:

" * * * In view, however, of the traditional judicial reluctance to act in this manner, legislative action may be necessary to bring about the desired change." 74 Harvard L.Rev. at 751.

The Wyoming legislature acted before the doctrine was inculcated into the state law, and we have no present interest in retrospectively creating a doctrine for a period of time predating the action of the legislature obviously undertaken to avoid the rule.

The exhaustively considered and carefully reasoned Iowa case of *Newbury v. McCammant, Iowa*, 182 N.W.2d 147, 45 A.L.R.3d 1 (1970) is clearly more persuasive than the contradicting case of *In re Krotzsch's Estate*, 60 Ill.2d 342, 326 N.E.2d 758 (1975), upon which appellee relied so extensively. The factual status of Newbury is very similar to this case, and the conclusion well derived in philosophy and legal reason:

" * * * [I]t has long been held the primary consideration in will construction is intent of the testator. [Citations.]

"And we resort to technical rules or canons of construction only if the language of a will is clearly ambiguous, conflicting, or testator's intent is for any reason uncertain. [Citations.]" 182 N.W.2d at 150.

Considering the testatrix' sale of the specifically devised realty, the court said as to the contracted balance of purchase price:

"Briefly stated, the remaining unpaid contractual proceeds are, (1) identifiable, (2) found in the estate, and (3) constitute identical property which testatrix intended should pass to appellants. As to such proceeds there is no ademption." 182 N.W.2d at 151.

The dissent also had something of value to say in the case:

"If we were starting anew here, perhaps the majority opinion would represent the best choice." 182 N.W.2d at 153.

See an excellent discussion of the case in Comment, *Ademption in Iowa—A Closer Look at the Testator's Intent*, 57 Iowa L.Rev. 1211, 1213 (1972).

Wyoming is starting *anew* and need not now adopt a discredited and legislatively repealed rule. Directly and specifically stated, the ademption rule of Lord Thurlow more frequently than not serves to frustrate intent, and this will be such a case. Note, *Wills, Ademption and Legacies in Oklahoma*, 14 Okla.L.Rev. 108, 113 (1961); Mechem, *Why Not a Modern Wills Act*, 33 Iowa L.Rev. 501, 515 (1958). See also other law journal articles which speak to the subject in detail, supra n. 3, including the conclusion of Paulus, *Ademption by Extinction: Smiting Lord Thurlow's Ghost*, 2 Texas Tech L.Rev. 195, 227 (1970–1971):

"The current status of the law of ademption by extinction framed in medical terms is, 'condition serious, prognosis poor.' The depressing nature of this report is due to the fact that the courts and legislatures have been treating the symptoms rather than the cause of the ailment. The cause, of course, is the 185-year-old identity doctrine. Current deficiencies are compounded by the fact that the medication prescribed to relieve the symptoms is often ineffective."

"The major ground of criticism of the ademption doctrine, and probably also the reason for the proliferation of exceptions to it, is that the results produced, whether favorable to the legatee or not, are often contrary to the testator's probable intention." 74 Harvard L.Rev. at 745–746.

To a like result see *In re Estate of Atkinson*, 19 Wis.2d 272, 120 N.W.2d 109 (1963);

Comment, *Wills—Ademption—Inapplicable Where Contract of Sale Follows Specific Devise of Land,* 49 Iowa L.Rev. 623 (1964).

## II

### *Effective Date Of Probate Code*

The result of the court's decision is to determine that the new Wyoming probate code applies to wills previously written in order to afford the significant modernization factor of the new law to those pre-1980 wills.

The applicable provisions include § 2–1–102, W.S.1977:

"Rules of construction and applicability.

"(a) This code shall be liberally construed and applied, to promote the following purposes and policies to:

"(i) Simplify and clarify the law concerning the affairs of decedents, missing persons, protected persons, minors and incapacitated persons;

"(ii) Discover and make effective the intent of a decedent in distribution of his property;

*     *     *     *     *     *

"(b) Unless displaced by the particular provisions of this code, the principles of law and equity supplement the code provisions.

"(c) This code is a general act intended as a unified coverage of its subject matter and no part of it shall be deemed impliedly repealed by subsequent legislation if it can reasonably be avoided.

"(d) The procedure herein prescribed shall govern all proceedings in probate brought after the effective date of this code. It shall also govern further procedure in proceedings in probate then pending unless the court determines its application in particular proceedings or parts

thereof is not feasible or will work an injustice, in which event the former procedure shall apply." [4]

Section 2–6–105, W.S.1977:

"The intention of a testator as expressed in his will controls the legal effect of his dispositions. The rules of construction expressed in the succeeding sections of this article apply unless a contrary intention is indicated by the will."

This intention section is followed by the specific rules of construction, which provisions include § 2–6–106, antilapse, deceased devisees, class gifts; § 2–6–107, failure of a testamentary provision; § 2–6–108, specific devise of securities, accessions, nonademption; § 2–6–109, nonademption of specific devises where sold, etc., by conservator, exception, rights of specific devisee; § 2–6–110, exercise of power of appointment; and § 2–6–111, nonexoneration.

For the court to hold otherwise would require the declaration that a potential beneficiary of some testamentary disposition has a property right in an existent will after execution, and also in the construction and interpretation afforded by case law or legislation existent at the time of execution without later possible amendment by case decision or statutory change. See *Redd v. Hargroves,* 40 Ga. 18 (1869). We do not accept that conclusion.

It is axiomatic that wills are ambulatory until testator death fixes inheritance rights. Park County ex rel. *Park County Welfare Department v. Blackburn,* Wyo., 394 P.2d 793 (1964).

" * * * The right to make a testamentary disposition of property is neither a natural nor a constitutional right. Such right is derived from and rests in positive law. A will is said to be ambulatory

---

**4.** The 1979 Act, Ch. 142, S.L. of Wyoming 1979, was subject to the curative Act of Ch. 54, S.L. of Wyoming 1980. In the first Act, the effective-date provision was stated at § 6 with slightly different phraseology:

" * * * The procedure herein prescribed shall govern all proceedings in probate brought after the effective date of this code. It shall

also govern further procedure in proceedings in probate then pending, except to the extent that, in the opinion of the court, its application in particular proceedings or parts thereof would not be feasible or would work injustice, in which event the former procedure shall apply."

until the death of the testator, and until that event occurs the testamentary disposition is subject to the will of the testator, and likewise to the will of the state as expressed in its public laws. The will speaks as of the date of the testator's death, and must conform to the laws in force at that time. These rules are elementary, and need no citation of authority in their support. While the Legislature may not interfere with or divest estates which have already become vested through the death of the testator, its power over wills, the manner of their execution, and the mode of carrying out their provisions is absolute and supreme until death occurs." *Strand v. Stewart,* 51 Wash. 685, 99 P. 1027, 1028–1029 (1909).

Not until the ancestor dies is there any vested right in the heir; no one is the heir of a living person, *nemo est haeres viventis.* See *In re Davidson's Estate,* 96 Cal. App.2d 263, 215 P.2d 504 (1950); *Riggs National Bank of Washington, D.C. v. Zimmer,* Del.Ch., 304 A.2d 69, aff'd 314 A.2d 178 (1973); *Haskell v. Wilmington Trust Co.,* Del.Super., 304 A.2d 53 (1973); *Friedman v. Cohen,* 215 Ga. 859, 114 S.E.2d 24 (1960); *Matter of Buffi's Estate,* 98 Ida. 354, 564 P.2d 150 (1977); *Estate of Weeks,* Me., 462 A.2d 44 (1983); *Evans v. Safe Deposit & Trust Co. of Baltimore,* 190 Md. 332, 58 A.2d 649 (1948); *Equitable Trust v. Smith,* 26 Md.App. 264, 337 A.2d 205 (1975); *In re Bresler,* 155 Mich. 567, 119 N.W. 1104 (1909); *Wilson v. Greer,* 50 Okla. 387, 151 P. 629 (1915); *Wakefield v. Phelps,* 37 N.H. 295 (1858); *In re Holibaugh's Will,* 18 N.J. 229, 113 A.2d 654, 52 A.L.R.2d 1222 (1955); *Varick v. Smith,* 69

N.J.Eq. 505, 61 A. 151 (1905); *Montclair Trust Co. v. Spadone,* 139 N.J.E. 7, 49 A.2d 497 (1946); *In re Davis,* 134 N.J.E. 393, 35 A.2d 880 (1944); *In re Linn's Estate,* 435 Pa. 598, 258 A.2d 645 (1969); *In re Tripp's Estate,* 402 Pa. 211, 166 A.2d 619 (1961); *In re Collin's Estate,* 393 Pa. 195, 142 A.2d 178 (1958); *Hannah v. Hannah,* 70 R.I. 175, 37 A.2d 783 (1944); *Dwight v. Dwight,* 64 R.I. 294, 12 A.2d 227, 129 A.L.R. 855 (1940). See also Annot., 129 A.L.R. 859, Law in effect at time of execution of will or at time of death of testator as controlling.

"* * * [I]t may be noted that in some cases the courts, while holding that the statute in force at the date of death of the testator controlled, have stated that, the will being ambulatory and so not becoming effective until the death of the testator, such statute was not retrospective, since it affected no rights vested before its passage." 129 A.L.R. at 861.

The misapprehension as to the law as contended by the dissenting opinion is reflected by footnote exclusion of the Wyoming cases of *Matter of Miller's Estate,* Wyo., 541 P.2d 28 (1975); *In re Randall's Estate,* Wyo., 506 P.2d 432 (1973); and *Park County ex rel. Park County Welfare Department v. Blackburn,* supra. The dissenting opinion distinguishes between "status of beneficiaries and their respective interests in the property of the estate," as compared with "that which is in the estate and its attributes or to the intention of the testator."

First, this distinction is not generally established by the voluminous case law.[5]

---

5. *Matter of Miller's Estate,* supra, spouse-election; *In re Randall's Estate,* supra, adoption; *Park County ex rel. Park County Welfare Department v. Blackburn,* supra, devolutionary of heirs determined by date of death; *Powell's Distributees v. Powell's Legatees,* 30 Ala. 697 (1857), contract for conveyance of lands and slaves; *Welsh v. Pounders,* 36 Ala. 668 (1860), installment sale of real estate interest; *Bush v. First National Bank of Tuskaloosa,* Ala., 431 So.2d 1229 (1983), contingent remaindermen interpretation; *In re Brace's Estate,* 180 Cal.App.2d 797, 4 Cal.Rptr. 683 (1960), validity of will as to personalty; *In re Davidson's Estate,* supra, chari-

ty bequest limitations; *Heinneman v. Colorado College,* 150 Colo. 515, 374 P.2d 695 (1962), operation of the instrument, not its construction—stock split; *Haskell v. Wilmington Trust Co.,* supra, issue as determined by adoption statute; *Riggs National Bank of Washington, D.C. v. Zimmer,* supra, gift class as affected by adoption; *Warner v. First National Bank of Atlanta,* 242 Ga. 661, 251 S.E.2d 511 (1978), adoption; *Arrington v. Hosemann,* 224 Ga. 592, 163 S.E.2d 722 (1968), execution of a trust; *Carnegie v. First National Bank of Brunswick,* 218 Ga. 585, 129 S.E.2d 780 (1963), adoptive child—remain-

More particularly, ademption is specifically an artificial conception of presumed intent now abrogated by the Wyoming legislature.

The present Wyoming statutes are determinative in providing:

"Discover and make effective the intent of a decedent," § 2–1–102(a)(ii),

and:

"A specific devisee has the right to the remaining specifically devised property and:

"(i) Any balance of the purchase price together with any security interest owing from a purchaser to the testator at death by reason of sale of the property * * *." Section 2–6–109.

The general law quoted by the dissenting opinion on the retrospective implementation of legislation is not in issue, but also is not determinative.

Two answers immediately arise. First, in considering the probate code in term and philosophy, there is clear cause for the declaration and determination that the intent was to apply this general law generally

" * * * unless the court determines its application in particular proceedings or parts thereof is not feasible or will work

an injustice, in which event the former procedure [or provision] shall apply." Section 2–1–102(d).

Secondly, the court is charged, not only by § 2–1–102, W.S. 1977, of the new probate code, but demonstrably by prior law with the ascertainment of testator intent. Section 2–1–102(a)(ii). See also § 2–6–105; *Industrial National Bank of Rhode Island v. Austin*, 100 R.I. 697, 210 A.2d 389 (1966); *In re Works' Estate*, 168 Kan. 539, 213 P.2d 998 (1950).

The subject was well stated in the California case, *In re Moore's Estate*, 135 Cal. App.2d 122, 286 P.2d 939, 943–944 (1955):

"But California has outgrown this ancient doctrine in favor of effectuation of the actual intent of the testator so far as it can be discerned."

Additionally, the law of probate is clear and universal that no vested expectancy exists in favor of an heir by virtue of the provisions of a will until death, or at least as long as the testator is competent to alter or amend.

As to the tens of thousands of Wyoming wills presently outstanding, it can hardly be construed or asserted that either the testator or the attorney-scrivener only ex-

---

dermen; *Friedman v. Cohen*, supra, divorce; *Matter of Buffi's Estate*, supra, noncupative will; *Draper v. Morris*, 137 Ind. 169, 36 N.E. 714 (1894), spouse election; *Newbury v. McCammant*, supra, balance installment contract, real estate; *Lorieux v. Keller*, 5 Ia. 196 (1857), disinheritance; *Succession of Rabito*, La.App., 229 So.2d 380 (1969), termination date of testamentary trust; *Richie v. Richie*, Ky., 476 S.W.2d 190 (1972), dower right in real estate; *Estate of Weeks*, supra, marital deduction; *New England Merchants National Bank v. Groswold*, 387 Mass. 822, 444 N.E.2d 359 (1983), testamentary trust adoption; *Bunnell v. Hixon*, 205 Mass. 468, 91 N.E. 1022 (1910), spouse election; *Hund v. Holmes*, 395 Mich. 188, 235 N.W.2d 331 (1975), exercise of power of appointment (see § 2–6–110, W.S.1977, current law); *In re Hemmingsen's Estate*, Minn., 333 N.W.2d 880 (1983), revocation of will by marriage; *In re McClow's Estate*, supra, installment balance real estate contract; *Wakefield v. Phelps*, supra, power of woman to devise; *In re Holibaugh's Will*, supra, adoption; *In re Davis, supra*, revocation and revivor; *Varick v. Smith*, supra, will definition of children; *Matter of Seymour's Estate*, supra,

revocation by divorce, uniform probate code governs wills executed before its passage—involves will revocation; *Estate of Ragone*, 116 Misc.2d 993, 459 N.Y.S.2d 649 (1981), legislative change in inheritance—adoption; *Will of Tilly*, 88 Misc.2d 904, 388 N.Y.S.2d 254 (1976), next-of-kin definition; *In re Drury's Will*, 222 App.Div. 577, 226 N.Y.S. 712 (1928), violation of the statute against perpetuities; *North Carolina National Bank v. Norris*, 21 N.C.App. 178, 203 S.E.2d 657 (1974), rule against perpetuities; *C.L.W. v. M.J.*, N.D., 254 N.W.2d 446 (1977), uniform probate code, laws to inheritance legitimacy; *Wilson v. Greer*, supra, capacity to devise; *In re Linn's Estate*, supra, life estate power of consumption; *Hannah v. Hannah*, supra, omitted heir; *Dwight v. Dwight*, supra, omitted heir; *Re Ziegner's Estate*, 146 Wash. 537, 264 P. 12 (1928), divorce; *Weiss v. Soto*, 142 W.Va. 783, 98 S.E.2d 727 (1957), tax assessment, life estate or fee devise.

The foregoing are only illustrative as to the general scope of cases which have considered the effect of a statute passed after execution and before testator's death.

pects that the prior repealed law will apply in construction, effectuation and interpretation. *Matter of Seymour's Estate*, 93 N.M. 328, 600 P.2d 274, 277 (1979):

"* * * The Probate Code provided for a time lag prior to its effective date. This provided time for adjustments by parties who felt their will would need to be changed. The Code's planning period provision would not have been necessary if the Legislature had intended the Code to apply only to wills executed after its effective date."

Assuredly, as of March 30, 1980, it could hardly be said that the grandchildren in this case had a *vested right* through lack of knowledge or counsel inattentiveness that the Read heirs would not inherit their devise after the installment contract was executed, until the 1979 Wyoming law would become effective.

We hold that § 2–6–105, as well as other probate code provisions, mean what they say and are effective if the date of death follows the effective date of the probate code, unless then-existent vested rights are adversely affected.

Furthermore, if the testator and his attorney want ademption, lapse, nonaccession, power of attorney exercised by residual clause, or exoneration, then by earlier stated express intent in the will, or now by amendment, that expressed intent of the testator can be provided as required by § 2–6–105 and § 2–1–102, rather than continuing to apply outmoded rules of implied intent or nonintended result. 2 Texas Tech.L.Rev., supra.

## III

### Equitable Conversion

Equitable conversion, as a determinative rule in this case, and as implicated by the decision of the trial court, briefed by the parties and involved in the differences manifested in our decision, is a causative factor in ademption cases where installment contract sales were made. We get to ademption as an asset extinguished by virtue of equitable conversion as a theory of partial revocation. 2 Pomeroy's Equity Jurisprudence § 372 (5th ed.) p. 33.

In this case, decedent inherited a 29.17 per cent interest in ranch lands. She executed a will to leave that interest to her relatives in the family from which the interest had been inherited. She, as a member of that family, then entered into a sales agreement for the ranch sale with the funds due from the ranch price payable periodically on an installment, balloon-payment basis.

From the date of her inheritance to the date of her death, the esse of ownership remained undisturbed. Originally, a proportionate ownership existed, or if a partnership, then the interest was personal property all of the time, see § 17–13–503, W.S.1977, and *Simpson v. Kistler Investment Company*, Wyo., 713 P.2d 751 (1986). By the sales transaction, the ownership continued with the remaining value of the assets available at death to satisfy the determined special bequest.

The theory of equitable conversion as a function of the body of law surely should have nothing to do with the construction of intent to deny the substance of an intended bequest as available for devolution by testacy. Besides, how can the testator be more specific by the description of the devise than "all of my interest *and* title in the real estate"? (Emphasis added.) It is that interest, evolving from the sale and remaining balance due, which presently remains for distribution in accord with the expressed intent of the decedent.

"* * * [T]he theory of equitable conversion is a fiction invented by courts of equity in carrying out the intent of the testator, and it should be applied with that effect in view." *In re Graham's Estate*, 216 Kan. 770, 533 P.2d 1318, 1323 (1975).

The court denied application of the rule "* * * because we consider it [a] better reasoned rule and more in line with our prior decisions which give supreme importance to the intention of a testator." 533 P.2d at 1324.

Cf. earlier case, *In re Estate of Snyder*, 199 Kan. 487, 430 P.2d 212 (1967).[6]

We have been presented with two theories of artificial intent, to be serially embraced, to deter the decedent from accomplishing a desired result: ademption to defeat intent if the bequest can be considered to be extinguished, and equitable conversion to determine that extinguishment has occurred so ademption can be applied. *In re Estate of Atkinson*, supra.[7]

## IV

### Nebraska Ademption Statute

The Wyoming statutory provision which was in effect at the time of death is § 2–6–104, W.S.1977:

"Law governing meaning and effect.

"The meaning and legal effect of a disposition in a will is determined by the law of the state in which the will was executed, unless the will otherwise provides or unless the application of that law is contrary to the public policy of this state otherwise applicable to the disposition."

The will was written in Nebraska, prepared by a Nebraska attorney. Nebraska adopted the Uniform Probate Code ademption provision which, of course, is the same as the present Wyoming provision, and then determined that the modernized law was to be considered to be in effect as of the date of death by attribution in a partic-

ular will case. *In re McClow's Estate*, 205 Neb. 739, 290 N.W.2d 186 (1980). The pervasive logic of the commentators and text writers obviously had an effect in the draftsmanship of the Uniform Probate Code in the interpretative issues including the common-law rules of ademption. Chaffin, *The Time Gap in Wills: Shifting Assets and Shrinking Estates—Obsolescence and Testamentary Planning in Georgia*, 6 Ga.L.Rev. 649, 696 (1972).

Since we have now applied the same substantive interpretation for the Wyoming probate code as did the courts of Nebraska, it is not necessary to further pursue the forum interpretation statute included in the present Wyoming probate code, § 2–6–104, since the law is identical and the anti-ademption provision is effective as to the will in either state.

## V

### Read Lands Devolution As A Question of Testator's Intent

■ Simplicity and directness would call this court to give effect to the bequest as stated and afford distribution of the asset interest remaining in decedent at the date of her death in the properties inherited from her relatives by distribution of the balance remaining due on the installment contract to those designated by the will. Consequently, the law would do what dece-

---

6. Annot., 62 A.L.R.2d 95, is an annotation on anti-ademption statutes for installment contracts, and lists some of the states with this kind of curative statute. Effectiveness as to date of will is not discussed therein.

We should step back and readopt the common-sense philosophy of the Connecticut Supreme Court of 1912 in *Weed v. Hoge*, 85 Conn. 490, 83 A. 636 (1912), in considering a mortgage interest as a specific bequest:

" 'What, after all, is a devise of lands? It is only a devise of such estate or interest as the devisor has in the land, and prima facie whatever estate or interest the testator has in land will pass under a devise of it by that name, if it is specifically referred to so as to show that the testator had that particular land in his mind, and if there is nothing else to answer the description.' *Devenish v. Pester*, 72 L.T.R. (N.S.) 816, 818.

"In the present case the will does not in terms purport to give the land, but the testatrix's right, title, and interest in it." 83 A. at 639.

7. The absurdity of result is well demonstrated by Pleasant's Appeal, 77 Pen.State Rep. 356 (1875). Testator left to his wife all real and personal property in the island of Jamaica, by will dated 1830, including 130 slaves. In 1833, England freed the slaves and made provision for governmental reparations to former owners. Slaves were real property under the law. Equitable conversion not only extinguished the devise of the slaves, but the reparation was determined to be situate in England, not Jamaica, and thus not pass under "the specific devise." Undoubtedly, the former slaves enjoyed their changed status, but the will intent was appropriately frustrated. See a more enlightened approach involving ex-slaves, *Redd v. Hargroves*, supra.

dent directed by will to be done. *Shure v. Dahl,* N.D., 80 N.W.2d 825, 62 A.L.R.2d 953 (1957); *Washington Escrow Co. v. McKinnon,* 40 Wash.2d 432, 243 P.2d 1044 (1952); *Bates v. Fuller,* Tex.App., 663 S.W.2d 512 (1983); *Chandler v. Owen,* 233 Ga. 25, 209 S.E.2d 618 (1974).

The decision of this court is determined by the application of the explicit provisions of § 2–6–109(b)(i):

"Any balance of the purchase price together with any security interest owing from a purchaser to the testator at death by reason of sale of the property * * *."

The question finally remaining is whether anything in the will or the record would demonstrate an intent under the purview of § 2–6–105:

"The intention of a testator as expressed in his will controls the legal effect of his dispositions. The rules of construction expressed in the succeeding sections of this article apply unless a contrary intention is indicated by the will,"

so that § 2–6–109 would not apply. Obviously, the latter section explicitly covers the provision as a balance of the purchase price remaining unpaid at date of death of testator. Considering the terminology of the will as any "interest and title," the statutory provision seems explicitly to effectuate the intent of testator, and consequently we determine that the application of § 2–6–109 controls and the contract balance remaining for the Read ranch lands should be distributed in accord with the specific bequest provisions of Article X of the will.

Affirmed as to Case No. 85–106 (lapse), reversed as to Case No. 85–105 (ademption), and remanded for entry of an order in favor of appellant in Case No. 85–105.

THOMAS, Chief Justice, concurring in part and dissenting in part.

I am in accord with the opinion of the court in case No. 85–106 to the effect that Article X of this will did not lapse upon the prior death of Mrs. Newell's husband. I dissent from that aspect of the opinion which reverses the district court in case No. 85–105 and holds that pursuant to § 2–6–109, W.S.1977, the nieces and nephews of Mrs. Newell are to receive the unpaid balance of the proceeds from the installment sale contract covering the Read lands.

As my point of departure, I would rely upon the provisions of § 2–6–105, W.S. 1977, which provides:

"The intention of a testator as expressed in his will controls the legal effect of his dispositions. The rules of construction expressed in the succeeding sections of this article apply unless a contrary intention is indicated by the will."

In my view the majority mistakenly assumes that the application of the nonademption statute is consistent with Mrs. Newell's intent. As I read this will, it seems clear to me that Mrs. Newell wanted to preserve the Read lands as a family ranch, so long as it was the purpose of other owners to do that. In my view, however, when this will is read in its entirety, one becomes impressed with the proposition that the entire focus of the will was to provide for Mrs. Newell's grandsons who were the beneficiaries of the testamentary trust. The only exception to that overall purpose and motive was to preserve the Read ranch as a family ranch, and once it was sold by those who owned an interest in it, I am satisfied that Mrs. Newell wanted the cash proceeds included in the testamentary trust for her grandsons.

At the time Mrs. Newell executed her will, the attorney who assisted her in that endeavor quite properly would have advised her that "[t]he common-law doctrine that ademption results where there has been a sale of the specific property by the testator before the will becomes operative * * *" was in effect in Nebraska. *In re McClow's Estate,* 205 Neb. 739, 290 N.W.2d 186 (1980), citing *Baacke v. Baacke,* 50 Neb. 18, 69 N.W. 303 (1896); *In re Estate of Bose,* 136 Neb. 156, 285 N.W. 319 (1939); and *Austin v. Austin,* 147 Neb. 109, 22 N.W.2d 560 (1946). In light of the adoption in Wyoming of the principle of

equitable conversion, *Baldwin v. McDonald*, 24 Wyo. 108, 156 P. 27 (1916), it would have been an appropriate prediction that the law in Wyoming would adopt the concept of ademption. I do not feel free to ignore these legal facts in resolving the issue of the actual intent of the testator, Mrs. Newell. In executing her will she would have been entitled to rely upon advice as to the state of the law from her Nebraska attorney in concluding that the language and provisions used in this will would result in the proceeds from the sale of the Read lands becoming a part of the trust for her two grandsons.

In *Dainton v. Watson*, Wyo., 658 P.2d 79 (1983), this court said that it has been its long-accepted position that the intent of the testator, as determined from the will, governs. This rule is reaffirmed by the provisions of § 2–6–105, W.S.1977. I would continue to apply those principles to the effect that, as I have noted, this will speaks to an intent of benefiting the testatrix's grandsons exclusively with the exception of an acknowledged desire to maintain the Read family ranch. This latter purpose of course was frustrated by the sale.

I would also point out that the application of the nonademption provision of the Wyoming Probate Code creates a somewhat anomalous situation in that the grandsons receive the proceeds of any amounts paid on the installment land contract prior to Mrs. Newell's death, and her nephews and nieces receive only that payable subsequent to her death. I have some difficulty with the statutory logic that the application of the nonademption provision thus effectuates the intent of a testator, as presumed by the legislators when it leaves some of the property in the hands of the nieces and nephews but the balance goes to the testamentary trust for the grandsons.

I would affirm the district court in all respects.

ROONEY, Justice, dissenting in Case No. 85–105.

My dissent from the "Ademption" section of the majority opinion was originally presented to the Court for consideration as part of the majority opinion. It read as follows:

### ADEMPTION—CASE NO. 85–105

In *In re Estate of Scott*, Wyo., 642 P.2d 1287, 1289 (1982), on appeal after remand, 657 P.2d 361 (1983), we said that "[a]demption has been defined in several ways," and we quoted definitions thereof from several sources. Among such definitions were:

" 'Ademption means "a taking away." For our purpose if the particular piece of property, real or personal, is not found in the estate and the bequest or devise cannot be fulfilled there is said to be an ademption. * * * ' *In Re Bierstedt's Estate*, 254 Iowa 772, 119 N.W.2d 234, 236 (1963).

     \*     \*     \*     \*     \*     \* .

" 'It would consequently seem better, instead of attempting to deduce from the cases any all-inclusive definition of the term "ademption," to point out that an ademption of a legacy or devise may result from a variety of causes or circumstances, among which may be mentioned, in the case of gifts of specific property, the nonexistence of the property at the death of the testator, or its * * disposal by sale, gift, or other alienation, or change in form, during the lifetime of the testator * * *.' 80 Am.Jur.2d Wills, § 1702 * * *." 642 P.2d at 1289–1290.

As long ago as 1916 we settled the relation between a vendor and vendee under a contract for sale of land in Wyoming as:

" * * * [T]he vendee is treated as the beneficial owner of the land and the vendor as the owner of the purchase-money * * *." *Baldwin v. McDonald*, 24 Wyo. 108, 134, 156 P. 27 (1916).

It is consistent to hold that a contract for deed is sufficient as a "sale" or "other alienation" of the property for the purpose of adeeming a specific devise of such property.

Of course, such recognized law could be changed by statute. And it was changed by the enactment of § 2–6–109(b), W.S.1977

(July 1980 Replacement), effective date of April 1, 1980.[1] This section provides in pertinent part:

"(b) A specific devisee has the right to the remaining specifically devised property and:

"(i) Any balance of the purchase price together with any security interest owing from a purchaser to the testator at death by reason of sale of the property; * * * "

The statute would certainly settle the ademption question here presented with reference to a will executed subsequent to April 1, 1980—there would not be an ademption. Plaintiffs contend that the statute prevented ademption in this case, wherein the deceased died after April 1, 1980, albeit the will was executed in 1969, prior to the enactment of the statute, and the contract for deed was executed on January 28, 1980, prior to the effective date of the statute. They point to § 2–1–102(d), W.S.1977 (July 1980 Replacement), which provides:

"The procedure herein prescribed shall govern all proceedings in probate brought after the effective date of this code. It shall also govern further procedure in proceedings in probate then pending unless the court determines its application in particular proceedings or parts thereof is not feasible or will work an injustice, in which event the former procedure shall apply."

However, § 2–1–102(d) speaks only to *procedures*. It has no application to substantive law. Section 2–6–109(b) did change the substantive law and cannot be applied retroactively. Retrospective operation of a statute to events occurring before enactment of a statute is not favored. *In re Estate of Boyd*, Wyo., 606 P.2d 1243 (1980), and cases quoted therein. Also see *Hagood v. Texas Pacific Coal and Oil Company*, Wyo., 356 P.2d 135 (1960). In construing a will to determine the intent of the testator as such appears from a full and complete consideration of the entire will when read in the light of the surrounding circumstances (see In re Estate of Croft), one of the most important "surrounding circumstances" is the law in force at the time the will was executed. The intent of the testator must be to have the will governed by such law. Deceased's intent, at the time of execution of the contract for deed, was to dispose of the Converse County property other than by will.

Plaintiffs point to cases in which rights of inheritance and devolution rights are determined as of the time of the death of the testator or intestate.[2] Such rights pertain to the status of beneficiaries and their respective interests in the property of the estate as of that time. They do not pertain to the determination of that which is in the estate and its attributes or to the intention of the testator concerning such when making his will. Our holding that the law in effect at the time the will was executed controls the fact ademption is not predicated upon any rights vesting in beneficiaries at the time of death. Such rights do not vest simply because a will is executed. The statute simply does not apply to the substantive right of the deceased to make a will and to adeem a provision thereof before her death in accordance with an intention formulated under existing law.

Plaintiffs also argue that § 2–6–104, W.S.1977 (July 1980 Replacement), requires the application to this case of Nebraska law, which is similar to § 2–6–109(b). Section 2–6–104 was enacted as part of the present Wyoming Probate Code. It provides:

"The meaning and legal effect of a disposition in a will is determined by the law of the state in which the will was executed, unless the will otherwise provides or unless the application of that law is

1. The section is a part of the Wyoming Probate Code, which is a complete revision of the previous probate code and consists of §§ 2–1–101 through 2–15–107, W.S.1977 (July 1980 Replacement).

2. *In re Estate of Miller,* Wyo., 541 P.2d 28 (1975); *In re Estate of Randall,* Wyo., 506 P.2d 432 (1973); *Park County ex rel. Park County Welfare Department v. Blackburn,* Wyo., 394 P.2d 793 (1964).

contrary to the public policy of this state otherwise applicable to the disposition." Our determination of the law in effect at the time the will was executed makes unnecessary extensive consideration of this argument. Nebraska law at that time was substantially the same as Wyoming law before enactment of the present Wyoming Probate Code. Additionally,

"[a]t common law, if not modified by statute, the general rule in the United States is that the validity, operation, effect, etc., of a will by which real property is devised is determined by the law of the place where the land is situated; or, as it is sometimes called in the language of an earlier day, the lex rei sitae. * * *" 6 Bowe-Parker: Page on Wills, § 60.3 at 445 (1962).

As an aside, the "unless" clause of § 2–6–104 indicates the propriety of the testator making a determination as to which law of the several states shall control the provisions of his will. It would seem to follow that, unless stated otherwise, he would intend the will to be controlled by the law in effect at the time he made the will.

The devise in Article X of deceased's will was a specific devise of real property. The property was alienated by deceased before her death. Thus, the devise adeemed under the law in effect at the time the will was executed, and such law controls this particular incident.

I would have affirmed Case No. 85–105.